## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

LISA T.,

      **Plaintiff,**

**vs.**                                                            **CIVIL ACTION NO. 2:23-CV-00791**

**MARTIN J. O'MALLEY,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered December 15, 2023 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in Support of Complaint and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 5, 6)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request to reverse and remand for an outright award of benefits, or to remand this matter for further proceedings (ECF No. 5), **GRANT** the Defendant's request to affirm the decision of the

1

Commissioner (ECF No. 6); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

<u>**Procedural History**</u>

The Plaintiff protectively filed her applications for DIB and for SSI in February 2021 alleging her disability began on December 9, 2020 due to degenerative disc disease, anxiety and depression, fibromyalgia with chronic fatigue syndrome, three pulmonary embolisms, chronic kidney disease, diverticulitis, thyroid issues, arthritis, asthma, lung disease, and migraines. (Tr. at 17, 259) Her claims were initially denied on May 19, 2021 (Tr. at 17, 68-75, 77-84) and denied again upon reconsideration on January 14, 2022 (Tr. at 17, 86-97, 99-109). Thereafter, the Plaintiff filed a written request for hearing on February 9, 2022. (Tr. at 142-143)

An administrative hearing was held on October 27, 2022 before the Honorable Nathan Brown, Administrative Law Judge ("ALJ"). (Tr. at 44-67) On December 15, 2022, the ALJ entered an unfavorable decision. (Tr. at 14-43) On October 17, 2023, the Appeals Council denied the Plaintiff's Request for Review (Tr. at 220-222), thus the ALJ's decision became the final decision of the Commissioner. (Tr. at 1-6)

On December 14, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed a Brief in Support of Complaint (ECF No. 5); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 6), to which the Plaintiff filed her Reply Brief (ECF No. 7). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 48 years old as of the alleged onset date, and was 50 years old at the time of the administrative hearing, and therefore transitioned from a "younger person" to a "person closely approaching advanced age" during the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), (d), 416.963(c), (d). (Tr. at 46, 68) She completed one year of college in December 2020 and last worked as a customer service representative and a secretary, both classified as skilled, sedentary exertion occupations, and as actually performed by the Plaintiff. (Tr. at 32-33)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry

is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently,

appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings

and conclusion reached in applying the technique must be documented at the ALJ and Appeals

Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status

requirements through June 30, 2023. (Tr. at 20, Finding No. 1) Next, the ALJ determined the

Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged

in substantial gainful activity since the alleged onset date of December 9, 2020. (Id., Finding No.

2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments:

chronic sacroiliac joint (SI joint) syndrome; cervical degenerative disc disease with radiculopathy

and lumbar lordosis; osteoarthritis; hernia; asthma; bilateral knee osteoarthritis; arthritis of the

wrist/hands, including the thumbs; bilateral carpal tunnel syndrome (CTS); pes cavus;

fibromyalgia; and left shoulder bursitis. (Id., Finding No. 3) At the third inquiry, the ALJ

concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in

20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to

perform light work except:

> she can operate hand and foot controls frequently bilaterally. For all reaching, she

6

can reach frequently bilaterally. She can handle, finger, and feel items frequently bilaterally. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes or scaffolds, balance frequently, stoop frequently, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never work at unprotected heights, around moving mechanical parts occasionally, in weather frequently, in humidity and wetness frequently, in atmospheric conditions frequently, in extreme cold frequently, in extreme heat frequently, and in vibration frequently. She can operate a motor vehicle frequently.

(Tr. at 25, Finding No. 5)

At step four, the ALJ found the Plaintiff is capable of performing her past relevant work as a secretary and customer service representative. (Tr. at 32, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability since December 9, 2020 through the date of the decision. (Tr. at 33, Finding No. 7)

### The Plaintiff's Challenges to the Commissioner's Decision

The Plaintiff argues that while the ALJ found mild limitations in all four domains of mental functioning, none were included in the RFC, and without explanation; numerous courts nationwide have deemed such omissions without explanation as reversible error. (ECF No. 5. at 2-16) Because this case does not turn on the Plaintiff's ability to return to unskilled work, but to skilled work, the ALJ's omission is especially prejudicial, therefore an explanation as to why the Plaintiff's mental functioning limitations were excluded from the RFC is necessary. (Id.) Additionally, the ALJ failed to abide by the "5-day Rule" under 20 C.F.R. §§ 404.935(a), 416.1435(a) – despite being advised by the Plaintiff's counsel of outstanding evidence in excess of five days before the hearing date, the ALJ declined to hold the record open or to admit this evidence into the record, thus depriving the Plaintiff's right to due process. (Id. at 16-18) The Plaintiff asks this Court to reverse and remand for an outright award of benefits, or for further administrative proceedings. (Id. at 19)

In response, the Commissioner argues that in this Circuit, there is no *per se* rule that an ALJ's findings in the four broad areas of mental functioning must be addressed in the RFC assessment, only that the ALJ's analysis allows for meaningful review, and is to be taken on a case-by-case basis. (ECF No. 6 at 7-9) In this case, the facts fail to demonstrate the Plaintiff had work-related limitations, and the ALJ was clear that both severe and nonsevere impairments were considered in the RFC determination, which included the Plaintiff's nonsevere mental impairments. (Id. at 10-12) In this case, the ALJ noted the RFC reflected exactly the degree of limitation she found in the mental functioning analysis at step two, that is, the mild limitations did not warrant RFC restrictions; the Commissioner points out the circumstances here are analogous to this Court's decision in *Peggy C. v. O'Malley*, No. 3:23-cv-00120, 2024 WL 542401, at *1 (S.D.W. Va. Jan. 25, 2024), *report and recommendation adopted*, 2024 WL 532324, at *1 (S.D.W. Va. Feb. 9, 2024). (Id. at 12-14) The Commissioner further contends that notwithstanding the Plaintiff's argument that the ALJ improperly found she could return to her past relevant skilled work, multiple courts have rejected the argument that any mild limitations conflict with ability to perform skilled work, and the evidence did not show the Plaintiff had any meaningful functional limitations. (Id. at 15-16) Finally, the Commissioner argues the ALJ complied with the pertinent Regulations and policy in consideration of the Plaintiff's "five-day letter"; the Plaintiff failed to provide specific information that identifies the evidence and show how it related to her medical condition or disability under SSR 17-4p. (Id. at 17-18) The ALJ explained that the Plaintiff's letter did not meet these requirements, and properly concluded the record was ripe for decision. (Id. at 18-19) The Commissioner also points out that at the hearing, the Plaintiff's counsel did not indicate any evidence that was missing, and never did indicate any missing evidence in the appeal to the

Appeals Council. (Id. at 19-20, n.2) The Commissioner asks this Court to affirm the final decision because it is supported by the substantial evidence. (Id. at 20)

In reply, the Plaintiff reiterates her arguments that the ALJ did not include her mental functional limitations in the RFC finding, or explain why they were omitted, despite the finding she could return to her past relevant skilled work and notes that this Court, including many other courts, found such errors worthy of remand. (ECF No. 7 at 3-5) The Plaintiff reasserts that the ALJ already received extensive evidence from the medical providers identified in compliance with the "5-day Rule" and was therefore sufficiently informed as to how that evidence related to her claim for benefits. (Id. at 6-7) Given the non-adversarial nature of disability proceedings, the Plaintiff characterizes the Commissioner's argument that she failed to inform the ALJ as to the relevance of the evidence in question puts an insurmountable burden on the Plaintiff, especially because she would not have known how it was relevant before having obtained it. (Id. at 8) Again, the Plaintiff asks this Court to reverse and remand for an outright award of benefits, or to remand this matter for further proceedings. (Id. at 9)

## **The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

## **The Medical Record:**

The Plaintiff's mental health diagnoses included depressive disorder, anxiety disorder,

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings; in this case, the focus is on the Plaintiff's mental impairments and their resulting limitations.

panic disorder, post-traumatic stress disorder ("PTSD"), somatic symptom disorder, and insomnia (Tr. at 427-431, 1036-1040, 1271-1292, 1586-1605, 1611-1613, 1779-1781, 1808-1811). Mental health treatment records from 2021 and 2022 showed a depressed but functional mood with the Plaintiff being described as calm, cooperative, and having good eye contact with rapport easily established (Tr. at 1532, 1535, 1538, 1541, 1550, 1587, 1612, 1780, 1783, 1786, 1789).

The Plaintiff underwent a psychiatric evaluation in June 2021 (Tr. at 1271-1275). The evaluator noted that the Plaintiff's complaints began in the 1990s and her symptoms were worsened with stress (Tr. at 1271). The Plaintiff presented with good eye contact; she was calm and cooperative; her mood was "depressed but [could] function;" her fund of knowledge, attention and concentration, insight, judgment, and impulse control were all "good;" and the evaluator concluded that "prognosis at this time is good due to willingness to participate in treatment" (Tr. at 1274).

The Plaintiff underwent two consultative psychological examinations in 2015 and 2021 with Kara Gettman-Hughes, M.A. (Tr. at 427-431, 1036-1040). In 2015, the examiner noted that the Plaintiff was cooperative with fair eye contact; her speech was responsive and coherent; she had a sad mood; her thought processes were understandable and connected; there was no evidence of delusions, paranoia, obsessive thoughts, or compulsive behaviors; her judgment was intact; her insight was fair; immediate memory was intact; recent memory was in the range of low average to mildly impaired; her remote memory was fair, her concentration was intact; her persistence was mildly impaired based on her ability to remain focused on a task; and her pace was normal (Tr. at 429-430). Ms. Gettman-Hughes noted that the Plaintiff's social functioning was "mildly impaired based on clinical observations of social interactions with the examiner and others (i.e., eye contact,

sense of humor, and mannerisms)" (Tr. at 430).

In the 2021 consultative examination, the Plaintiff reported that her mental health treatment consisted of medications prescribed by her family physician (Tr. at 1037). While most findings were consistent with the 2015 examination, Ms. Gettman-Hughes noted that the Plaintiff's recent memory was normal, compared to the prior assessment of "mildly impaired" (Tr. at 430, 1039). Her evaluation of the Plaintiff's social functioning was the same as the 2015 evaluation (Id.).

Regarding social functioning, the 2021 evaluation noted that the Plaintiff went to stores, ran errands weekly with her daughter, dined out a few times per month, walked for exercise, regularly visited family, talked on the phone, and had a few close friends (Tr. at 1039-1040). Her daily activities included keeping appointments, watching television, household chores including doing laundry, washing dishes, sweeping, and cooking, as well as playing games on her phone and spending time with her family (Tr. at 1040).

During the Plaintiff's initial review, the state agency psychological consultant, G. David Allen, Ph.D., noted her non-severe medically determinable impairments related to her depression, anxiety, and somatic conditions; despite these impairments, Dr. Allen concluded that the Plaintiff had no more than mild limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. at 72). Dr. Allen explained that the Plaintiff's "key functions" were no more than mildly limited based on his review of the records, including consultative examination observations, and noted that the Plaintiff was independent in activities of daily living, got along with others, and followed written instructions well (Id.). Dr. Allen did not assess any work-related functional limitations.

11

At the reconsideration level review, the state agency psychological consultant, Joseph Shaver, Ed.D., made similar conclusions except for "interacting with others," for which Dr. Shaver found no limitation (Tr. at 93). Having reviewed the record, Dr. Shaver explained that the Plaintiff's mental impairments were non-severe, noting her history of being calm and cooperative, her good insight, judgment, concentration, and attention span, appropriate memory skills, as well as her routine activities of daily living (Id.). Accordingly, Dr. Shaver concluded that the Plaintiff's mental impairments were non-severe (Id.). Dr. Shaver did not assess any work-related functional limitations.

**The Administrative Hearing:**

The Plaintiff's Testimony:

The Plaintiff testified that she has "a lot of bouts of depression" and described having panic attacks that came on suddenly and causing confusion. (Tr. at 54, 55) She stated that she is unable to focus on any set task or set any goals and that she has memory loss and feels like a burden to her family. (Id.) She provided examples of where she has suffered memory loss, like forgetting which side is hot when turning on a faucet. (Id.) She stated that she's on medication for her panic attacks, and to help deal with them, she will "just kind of have to sit and regroup myself and think" or try to relax. (Tr. at 55) To better handle stress, she puts everything on a calendar and refers to it many times during the day so she is not "throw[n] off" (Tr. at 55-56).

The Vocational Expert's Testimony:

The vocational expert categorized the Plaintiff's past work as bank teller as light physical exertion as performed, and as a secretary and as a customer service representative as sedentary; she testified that all three occupations are classified as skilled work (Tr. at 61). In response to the

ALJ's controlling hypothetical, the vocational expert testified that the hypothetical individual would be capable of performing the Plaintiff's past work as a secretary or customer service representative (Tr. at 62-64).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

Mental Limitations and the RFC Assessment:

The RFC determination is the "ability to do sustained work-related physical and mental

13

activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite her functional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See Id. §§ 404.1546(c), 416.946(c); see also Id. §§ 404.1520c(a), 416.920c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. Id. §§ 405.1545(a)(3), 416.945(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

There is no dispute between the parties as to the ALJ's finding that the Plaintiff had mild limitations all four areas of functioning[2] based on the overall record of evidence. This District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. See *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021)(Tinsley, M.J.), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021)(Copenhaver, J.); *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D.W. Va. May 21, 2021)(Tinsley, M.J.)(citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)(a claimant's "moderate limitation in concentration, persistence, or pace at step three" may not "affect [her] ability to work" and thus "does not translate into a limitation in [her RFC]")), *report and recommendation adopted*, 2021 WL 5230987 (S.D.W. Va. Nov. 9, 2021)(Copenhaver, J.). The point of contention here centers on whether the ALJ did an adequate job explaining why

---

[2] A "mild limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00F(2)(b).

he did not account for the Plaintiff's mild limitations in all areas of mental functioning in the RFC determination. As an initial matter, the Plaintiff does not challenge the ALJ's finding that her mental health impairments were non-severe, but instead takes issue with the ALJ's analysis at step two of the sequential evaluation process without providing further insight into how the ALJ accounted for the Plaintiff's mild limitations in the RFC, or at least explain why they were omitted.

From the undersigned's review, it is apparent that the ALJ did explain why the Plaintiff's non-severe mental impairments, including their resultant mild limitations mental functioning, were excluded from the RFC: from the onset at step two, the ALJ acknowledged the Plaintiff "also has nonsevere impairments that . . . have no more than a minimal, if any, effect on the claimant's ability to perform basic work activities and *therefore result in no functional impact*." (Tr. at 20)(*emphasis* added) Subsequently, the ALJ also expressly stated he considered all of the Plaintiff's medically determinable impairments, including those that are not severe, "*when assessing the claimant's residual functional capacity*." (Tr. at 21)(emphasis added) This included the Plaintiff's medically determinable diagnoses of depressive disorder, anxiety disorder, panic disorder, post-traumatic stress disorder (PTSD), somatic symptom disorder, and insomnia: the ALJ considered these impairments "singly and in combination", finding they did not cause more than minimal limitations in the Plaintiff's ability to perform basic mental work activities, and therefore determined they were non-severe. (Id.)

In assessing the Plaintiff's limitations in all four broad areas of mental functioning, the ALJ considered the Plaintiff's testimony, her statements in support of her applications for benefits, the observations made by the psychological consultative examiner in 2015 and in 2021, in addition to the Plaintiff's mental health treatment records, discussed *supra*. (Tr. at 21-22, 277-289, 427-433,

1036-1041, 1271-1299, 1585-1605, 1610-1613, 1778-1790, 1807-1811, 2055-2059) Later on in the written decision, the ALJ also noted that with respect to the Plaintiff's fibromyalgia, she was "never placed on anything specifically to treat her symptoms" although her primary care provider prescribed her Cymbalta to treat "both mental health issues as well as fibromyalgia aches and pains" (Tr. at 30, 771). Notably, the ALJ stated that the Plaintiff's fibromyalgia symptoms, including "anxiety disorder, depressive disorder,  and insomnia" were considered in formulating the Plaintiff's RFC, though the ALJ ultimately determined that the Plaintiff should be restricted from exposure to temperature extremes and vibrations to prevent exacerbating her fibromyalgia symptoms. (Tr. at 31, 1560-1570) Significantly, the ALJ also considered the prior administrative findings of the state agency psychological consultants, *supra*, finding both opinions persuasive to the extent that the Plaintiff did not have severe mental impairments, and that G. David Allen, Ph. D., opined at the initial level of review that the Plaintiff had mild limitations in all four areas of the "paragraph B" criteria, whereas Joseph Shaver, Ed.D., opined at the reconsideration level that the Plaintiff had mild limitations in all categories except for interacting with others. (Tr. at 31-32, 68-75, 77-84, 86-97, 99-109) From this evidence, the ALJ found that the consultants' conclusions that the Plaintiff has non-severe mental impairments were consistent with the record, based on her generally normal to mildly impaired findings in the mental health treatment records, the mental health consultative examinations, and the Plaintiff's self-reported functioning in her signed adult function report (Tr. at 32, 277-289, 427-433, 1036-1041, 1271-1299, 1585-1605, 1610-1613, 1778-1790, 1807-1811). However, the ALJ found that "both consultative examinations are more consistent with mild level limitations in all areas of functioning, as detailed in the above paragraph B analysis. For example, the claimant is described with abnormal mood findings and mildly

impaired social functioning during both consultative examinations to be only mildly impaired." (Tr. at 32, 427-433, 1036-1041)

Indeed, the ALJ ultimately determined that the Plaintiff "has the above residual functional capacity assessment . . . [c]ollectively, the record supports no greater limitations." (Tr. at 32)

The undersigned observes that the case at bar is quite similar to another matter that came before this Court: in *Tammy R. v. Kijakazi*, No. 1:22-cv-00395, 2023 WL 6122140 (S.D.W. Va. Aug. 31, 2023)(Tinsley, M.J.), *report and recommendation adopted*, 2023 WL 6130565 (S.D.W. Va. Sep. 19, 2023)(Faber, J.), the Court affirmed the Commissioner's final decision that the claimant could return to her past relevant skilled work, despite finding mild limitations in all four areas of mental functioning; in that case, the adjudicator explained at step two that the claimant had no more than minimal work-related limitations due to her mental impairments, thus it was unnecessary to include them in the RFC determination. *Id*. at *8; see also, *Peggy C. v. O'Malley*, No. 3:23-cv-00120, 2024 WL 542401, at *1 (S.D.W. Va. Jan. 25, 2024)(Eifert, M.J.), *report an recommendation adopted*, 2024 WL 532324, at *1 (S.D.W. Va. Feb. 9, 2024)(Chambers, J.).[3] In this case, while the Plaintiff's past relevant work was classified as skilled, which is not disputed, the ALJ went beyond his step two analysis, and explained why the Plaintiff's mental limitations did not preclude her from performing her past relevant skilled work:

> In comparing the claimant's residual functional capacity with the physical and *mental* demands of this work, the undersigned finds that the claimant is able to perform the work of customer service representative and secretary as actually and generally performed.

---

[3] The undersigned agrees with the Commissioner that the *Peggy C.* case is analogous to the case sub judice to the extent that there is no "critical conflicting evidence that the ALJ failed to consider" in rendering the RFC that translated to any mental limitations that warranted their inclusion therein. (ECF No. 6 at 13)

(Tr. at 33)(*emphasis* added)[4]

In sum, the ALJ complied with his obligation under Sections 404.1545(a), 416.945(a) and SSR 96-8p, as he not only discussed all the relevant evidence as it related to the Plaintiff's mild limitations, but he also adequately explained why those restrictions were not included in the RFC assessment. Thus, this Court need not have to "guess about how the ALJ arrived" at this conclusion, allowing for meaningful judicial review. See Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).

In short, the resulting RFC assessment concerning both the Plaintiff's physical and mental impairments included the required discussion of all the relevant evidence that allows for meaningful judicial review. It is also clear that the RFC assessment is not a product of cherry-picking facts that support a finding of non-disability. Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017). In this case, the ALJ complied with the mandate to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

Accordingly, the undersigned **FINDS** that the RFC assessment is supported by substantial evidence.

Application of Sections 404.935(a) and 416.1435(a):

The Plaintiff argues that the ALJ also erred by failing to consider several pieces of evidence from the Plaintiff's providers, namely: Mid Ohio Nephrology Associates; Morad Hughes Health

---

[4] See also, Jackson v. Kijakazi, 2021 WL 9594379, at *3 (D.S.C. Aug. 26, 2021), Stephanie A. v. Kijakazi, 2023 WL 5124692, at *8 (E.D. Va. Jul. 24, 2023)("Absent any such showing by Plaintiff, there is no basis to find that Plaintiff's mild mental limitations conflict with her ability to perform skilled work."), *report and recommendation adopted*, 2023 WL 5109545, at *1 (E.D. Va. Aug. 9, 2023).

Center; Dr. Michaela E. Kessler; and Dr. Hatem Hossino (ECF No. 5 at 17; Tr. at 394). The Plaintiff contends that the ALJ did not allow this evidence to be incorporated into the record, although the ALJ would have known about this evidence (as well as their relevance to the Plaintiff's claim) because the Plaintiff had already included records from these sources in support of her claim. (ECF No. 5 at 18)

Pursuant to the aforementioned Regulations: "[e]ach party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. §§ 404.935(a), 416.1435(a). SSR 17-4p expands upon this requirement:

> To satisfy the claimant's obligation under the regulations to "inform" us about written evidence, *he or she must provide information specific enough to identify the evidence (source, location, and dates of treatment) and show that the evidence relates to the individual's medical condition, work activity, job history, medical treatment, or other issues relevant to whether or not the individual is disabled or blind.* If the individual does not provide us with *information specific enough to allow us to identify the written evidence and understand how it relates to whether or not the individual is disabled or blind,* the individual has not informed us about evidence within the meaning of 20 CFR 404.935, 404.1512, 416.912 or 416.1435, and we will not request that evidence.

SSR 17-4p, 2017 WL 4736894, at *3 (Oct. 4, 2017) (*emphasis* added); see Grant v. Kijakazi, 2022 WL 595135, at *8-9 (M.D.N.C. Feb. 28, 2022)(holding the ALJ did not err in excluding medical evidence because the plaintiff failed to comply with five-day rule because she did not provide "specific information enough" pursuant to SSR 17-4p), *report and recommendation adopted*, 2022 WL 981118 (M.D.N.C. Mar. 31, 2022). In this case, the ALJ explicitly stated that while the Plaintiff's counsel submitted a letter more than five business days prior to the administrative hearing, the letter did not meet the Ruling's requirements; the ALJ found, however, that the record before

19

him was adequately developed for decision. (Tr. at 17, 394) From the undersigned's review, the ALJ's determination was not in error, as the Plaintiff's submission did not indicate in any fashion how it related to her "medical condition, work activity, job history, medical treatment, or other issues relevant to whether or not [the Plaintiff] is disabled[.]" For instance, the Plaintiff indicated that records were outstanding from Mid Ohio Valley Nephrology Associates, and she ostensibly provides the dates of treatment: "(6/18/2021-Present and 1/1/2019-03/18/2021)". The Plaintiff provides no further detail as to what these records would be for, though it could be assumed based on earlier records that have been submitted on behalf of her claim. The only other references the Plaintiff provides are a series of dates from August 25, 2022 through October 11, 2022 where messages were left with this provider requesting records. (Tr. at 394) The Plaintiff provides similar entries for the remaining outstanding records from the aforementioned sources, without any further details as required under the applicable Regulations and Ruling.

As an additional matter, the Plaintiff does not explain or describe how these allegedly outstanding or missing records support her appeal: the official transcript does not contain any evidence submitted on the Plaintiff's behalf since the administrative hearing or entry of the ALJ's unfavorable decision; and there appears to have been no additional medical evidence submitted to the Appeals Council that outlines what the ALJ failed to consider in reaching his decision. On that note, the undersigned is at a loss in understanding how this outstanding or missing medical evidence helps the Plaintiff's position in this appeal – all the medical evidence the Plaintiff indicates the ALJ failed to consider concern her physical impairments, but the Plaintiff does not explain how this evidence would have changed the outcome of this case, and has not submitted this missing evidence

in furtherance of her appeal.[5] As pointed out by the Commissioner, during the administrative hearing, the Plaintiff's representative did not identify any outstanding or missing medical evidence, only stating that, "The entirety of the evidence in the file is consistent with the testimony given here today." (Tr. at 66) Notably, there was no objection or resistance to the ALJ's announcement at the end of the hearing: "At this time, I'm closing the record and the hearing[.]" (Id.)

The foregoing demonstrates that the Plaintiff's second assignment of error warrants no relief, the undersigned **FINDS** the ALJ did not err in declining to include additional medical evidence.

Finally, the undersigned further **FINDS** the final decision of the Commissioner denying benefits is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request to reverse and remand for an outright award of benefits, or to remand this matter for further proceedings (ECF No. 5), **GRANT** the Defendant's request to affirm the decision (ECF No. 6), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District

---

[5] Moreover, the undersigned notes that some medical evidence identified in the Plaintiff's "five-day letter" (Tr. at 394, "Morad Hughes Health Center-PRFC") was incorporated into the official record and expressly considered by the ALJ (see, e.g., Tr. at 32, 2060-2063). Other records identified by the Plaintiff indicate treatment dates that long predate the Plaintiff's alleged onset date, or concern treatment records dated earlier than other evidence of record considered by the ALJ.

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: April 10, 2024.



Omar J. Aboulhosn
United States Magistrate Judge